# B. W. & LEO HARRIS COMPANY v. CITY OF HASTINGS.[1]

July 24, 1953.

No. 35,978.

[1]Reported in 59 N. W. (2d) 813.

*Benedict Deinard* and *Leonard, Street & Deinard,* for appellant.
*R. W. Ganfield,* for respondent.

CHRISTIANSON, JUSTICE.

This is an action to determine adverse claims to a certain vacant, unenclosed lot in the city of Hastings. Plaintiff alleges it is the owner in fee and that the lot is vacant and unoccupied. Defendant denies that plaintiff is the owner in fee, alleges that it is the owner in fee, and affirmatively asks that it be adjudged the owner thereof, free from any claim of the plaintiff. The trial court made findings of fact and conclusions of law in favor of defendant. Plaintiff appeals from the judgment.

46

Plaintiff, B. W. & Leo Harris Company, claims title to the W 1/3 of block 16 in the city of Hastings through a recorded chain of title dating back to the platting of the property in 1855. In that year four original proprietors platted the town of Hastings, including block 16. In 1886, the Chicago, Milwaukee & St. Paul Railway Company acquired the fee interests of three of the four proprietors in block 16 by conveyances duly recorded. In 1897 the fourth proprietor purported to convey to the railway an undivided 1/4 interest in the E 2/3 of block 16 in exchange for the railway's conveyance to him of all its interest in the W 1/3 of block 16. Both conveyances were duly recorded. In 1920, the receiver of the St. Paul Southern Electric Railway Company acquired the fourth proprietor's interest in the W 1/3 of block 16 by a conveyance duly recorded. In 1928, the electric railway's assets, including its interest in the W 1/3 of block 16, were sold to Paper, Calmenson and Company at a receiver's sale. The sale was duly reported and confirmed by the district court of Dakota county, and the receiver's deed was duly recorded. In 1930, all of the real estate purchased at the receiver's sale was conveyed to plaintiff, which has been record owner of the W 1/3 of block 16 since that time.

Defendant, the city of Hastings, claims title to the W 1/3 of block 16 through adverse possession. Defendant asserts that its adverse possession commenced in 1876, matured in 1891, and has continued ever since, and the trial court so found. To establish its adverse possession, defendant relies in part upon acts of possession by itself as a corporate body acting through its agents and in part upon acts of individual members of the public.

■ Defendant relies upon use of the land in question by the general public for such things as ball games, carnivals, circuses, church socials, tent meetings, and parking cars. Defendant did not, however, except possibly in one instance, introduce any evidence to show that anyone was ever issued a permit or otherwise obtained permission from defendant for such uses and, except as hereinafter noted, it did not in any other way connect such uses to itself. On the contrary, there was undisputed evidence that in some instances

permission had been asked of, and was granted by, plaintiff. In our opinion, acts of the public are not sufficient to establish adverse possession to a vacant lot on the part of a city without evidence connecting such acts to the city.

■ Defendant also relies in part upon the fact that for many years the W 1/2 of block 16 was assessed in defendant's name and that no taxes were assessed against it. This court has held that, since it is only the possession which appears on the land itself which affects the true owner, the payment of taxes, although evidence of a claim of title, is not evidence of adverse possession.[2] Furthermore, this court has held that a person examining titles is not required or expected to examine the books in the county auditor's office to ascertain whom they list as owner or who has paid the taxes because the books are not kept as a record of titles to real estate and do not constitute constructive notice to a proposed purchaser of record title that the person listed there as owner has any interest in the land.[3] The principle that the county auditor's records do not constitute constructive notice of an interest in land may logically be extended to this case. The holder or purchaser of record title to real estate need not examine the county auditor's records to determine whether anyone is claiming an adverse interest in that real estate.[4]

■ Before we consider the evidence relating to defendant's claim of adverse possession, we are faced with M. S. A. 541.023, which plaintiff contends bars defendant's claim of title based on events more than 40 years old. That statute provides in part:

"Subdivision 1. As against a claim of title based upon a source of title, which source has then been of record at least 40 years, no action affecting the possession or title of any real estate shall be commenced by a person, partnership, corporation, state, or any

[2]Krueger v. Market, 124 Minn. 393, 145 N. W. 30.

[3]Roussain v. Norton, 53 Minn. 560, 55 N. W. 747.

[4]See Standard No. 31, Minnesota Standards for Title Examination, published by Section of Real Property Law of Minnesota State Bar Association.

political division thereof, after January 1, 1948, to enforce any right, claim, interest, incumbrance or lien founded upon any instrument, event or transaction which was executed or occurred more than 40 years prior to the commencement of such action, unless within 40 years after such execution or occurrence there has been recorded in the office of the register of deeds or filed in the office of the registrar of titles in the county in which the real estate affected is situated, a notice sworn to by the claimant or his agent or attorney setting forth the name of the claimant, a description of the real estate affected and of the instrument, event or transaction on which such claim is founded, and stating whether the right, claim, interest, incumbrance or lien is mature or immature. * * *

"Subd. 2. This section shall apply to every right, claim, interest, incumbrance or lien founded upon any instrument, event or transaction 40 years old at the date hereof, or which will be 40 years old prior to January 1, 1948, except those under which the claimant thereunder shall file a notice as herein provided prior to January 1, 1948.

* * * * *

"Subd. 5. Any claimant under any instrument, event or transaction barred by the provisions of this section shall be conclusively presumed to have abandoned all right, claim, interest, incumbrance or lien based upon such instrument, event or transaction; and the title in the name of any adverse claimant to the real estate which would otherwise be affected thereby shall not be deemed unmarketable by reason of the existence of such instrument, event or transaction; it being hereby declared as the policy of the State of Minnesota that, except as herein provided, ancient records shall not fetter the marketability of real estate.

"Subd. 6. This section shall not * * * bar the rights of any person, partnership or corporation in possession of real estate."

The trial court found, and defendant apparently concedes, that defendant has not filed any notice of claim under this statute. The statute operates to bar a claimant of an interest in real estate under a 40-year-old instrument, event, or transaction from com-

mencing an action affecting possession or title to enforce his claim unless a notice of claim has been filed in accordance with subd. 1 of the statute. It is apparent from a reading of the statute that it was not intended as a mere procedural device to limit the time for commencing such action but was intended to bar the right itself for subd. 5 provides a conclusive presumption that the claimant has abandoned his right.

■ Therefore, no notice having been filed, the statute bars that part of defendant's claim based upon alleged adverse possession occurring more than 40 years before this action was commenced unless, as defendant claims, it was in possession of the real estate within the meaning of subd. 6. If a claimant subject to the provisions of the statute has not filed the required notice, the only way he can avoid the statute's conclusive presumption is by being in possession at the time it would otherwise take effect. If at any later time he abandons his possession, the bar falls and he cannot revive his right by again going into possession. Thus, to avoid the conclusive presumption of abandonment imposed by the statute, the claimant's possession must be continuous. If the claim is based upon an instrument, event, or transaction which was 40 years old on January 1, 1948, the claimant's possession must have begun at least by that date and must continue until action is commenced; if it is based upon an instrument, event, or transaction which becomes or became 40 years old after January 1, 1948, the claimant's possession must begin or have begun at the end of the 40-year period and must continue until action is commenced.

■ A further question arises as to the nature of the possession required by § 541.023, subd. 6. In our opinion it must be present, actual, open, and exclusive and must be inconsistent with the title of the person who is protected by this section. It cannot be equivocal or ambiguous but must be of a character which would put a prudent person on inquiry.[5]

---

[5]This is the same type of possession which constitutes constructive notice under the real estate recording act, § 507.34. See, Olson v. Olson, 203 Minn. 199, 280 N. W. 640, 281 N. W. 367; Farmers State Bank v.

■ To take advantage of adverse possession occurring before January 1, 1908, defendant must show that it had continuous possession of the required nature from January 1, 1948, to January 25, 1950, the date this action was commenced. The trial court found that defendant has been in actual, open, continuous, hostile, and exclusive possession of the W 1/3 of block 16, with intent to hold it against the whole world, since 1876, which necessarily includes the period between January 1, 1948, and January 25, 1950.

The evidence of possession by defendant specifically referable to that period, viewed in the light most favorable to the trial court's finding, is as follows: Defendant erected and flooded a skating rink for public use and put up a warming house on part of the tract each winter, and its employees watched over the rink. Defendant's park commissioner cleaned the tract up every spring and after certain unspecified celebrations and kept the weeds cut in summer. Defendant's employees occasionally hauled dirt from city streets to the tract, and a baseball backstop erected by defendant's employees stood on it. While the minutes of defendant's city council for July 20, 1949, make reference to the granting of a permit for the holding of a circus in the vicinity of the W 1/3 of block 16, the evidence fails to show whether or not the circus in question was ever held.

Although the foregoing acts are inconsistent with ownership of the tract by plaintiff and are such as would put a prudent man on inquiry as to the asserted rights of the defendant, the evidence is far from sufficient to support a finding that possession of the nature required to avoid the conclusive presumption of § 541.023, subd. 5, was *continuous* over the period from January 1, 1948, to January 25, 1950. It follows that the statute is applicable and that, insofar as defendant's claim of title to the W 1/3 of block 16 is based upon adverse possession occurring before January 1, 1908, its claim is barred.

Cunningham, 182 Minn. 244, 234 N. W. 320; Roussain v. Norton, 53 Minn. 560, 55 N. W. 747; Morrison v. March, 4 Minn. 325 (422).

Any acts of adverse possession which occurred between January 1, 1908, and January 25, 1910, became 40 years old before this action was commenced, and a claim based upon any such acts would be barred by § 541.023 unless the claim was preserved by continuous possession which began when the acts relied upon became 40 years old and continued until this action was commenced. However, we need not consider whether there was any such continuous possession because there is no evidence whatever to support the trial court's finding that defendant was in adverse possession of the premises with respect to the period from January 1, 1908, to January 25, 1910, or any part of that period.

■ There remains the 40-year period between January 25, 1910, and the commencement of this action, which period was included in the trial court's finding that defendant was in actual, open, continuous, hostile, and exclusive possession of the W 1/3 of block 16, with intent to hold it against the whole world. No useful purpose would be served by setting out in detail the evidence relating to defendant's claim of adverse possession during the period in question. We have carefully reviewed the record and transcript and have analyzed the evidence, viewing it in the light most favorable to the finding, and we conclude that it falls short of what is necessary to support the finding. Many acts of possession upon which defendant relies to establish its adverse possession were never tied down to any specific dates; others were not shown to have existed for any specific length of time; and others were of such ambiguous and equivocal import as to be entirely inadequate to fulfill the requirements of law. The gaps left cannot be filled by reference to acts of possession which might have occurred at any of several different times over the 40-year period. No definite 15-year period was shown during which it could be said that defendant had the actual, open, continuous, hostile, and exclusive possession of the W 1/3 of block 16 which is necessary to establish adverse possession.

We therefore conclude that, as between the parties hereto, plaintiff is the owner in fee of said premises and defendant has no estate

or interest therein. It follows that the judgment appealed from should be reversed and the case remanded with directions to the trial court to amend its findings and conclusions of law so as to conform with the views herein expressed.

Reversed and remanded with directions.

MR. JUSTICE NELSON, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.