## TOWNSHIP OF STERLING v. EDGAR GRIFFIN AND ANOTHER.

244 N. W. 2d 129.

June 25, 1976—No. 45763.

*Etzell, Harten & Sinclair* and *James C. Harten,* for appellant.
*Piper & Sunde* and *LaMar Thomas Piper,* for respondents.

Heard before Otis, Peterson, and Yetka, JJ., and considered and decided by the court en banc.

YETKA, JUSTICE.

Appeal from the judgment of the Blue Earth County District Court in favor of respondents, and its order denying appellant's motion for new trial or amended findings of fact. The action was brought by Sterling Township to permanently enjoin respondents from interfering with a town road. The court, following trial, entered findings of fact, conclusions of law, and order for judgment in favor of respondents based on its ruling that appellant's claim to the road was barred by the so-called Marketable Title Act, Minn. St. 541.023.[1] We affirm.

The road was established August 31, 1889, by order of the Sterling Town Board, Blue Earth County. An original of that order remained in the official town records and a copy was filed

---

[1] Minn. St. 541.023, subd. 1, provides: "As against a claim of title based upon a source of title, which source has then been of record at least 40 years, no action affecting the possession or title of any real estate shall be commenced by a person, partnership, corporation, state, or any political division thereof, after January 1, 1948, to enforce any right, claim, interest, incumbrance or lien founded upon any instrument, event or transaction which was executed or occurred more than 40 years prior to the commencement of such action, unless within 40 years after such execution or occurrence there has been recorded in the office of the register of deeds or filed in the office of the registrar of titles in the county in which the real estate affected is situated, a notice sworn to by the claimant or his agent or attorney setting forth the name of the claimant, a description of the real estate affected and of the instrument, event or transaction on which such claim is founded, and stating whether the right, claim, interest, incumbrance or lien is mature or immature. If such notice relates to vested or contingent rights claimed under a condition subsequent or restriction it shall affirmatively show why such condition or restriction is not, or has not become nominal so that it may be disregarded under the provisions of Minnesota Statutes 1945, Section 500.20, Subdivision 1."

in the office of the Blue Earth county auditor, as required by statute.

A portion of the town road, one rod wide, ran in an east-west direction across the northern boundary of a 10-acre tract of land which Edgar and June Griffin, respondents, rented in 1955, contracted to purchase in 1959, and which was conveyed to them by warranty deed dated March 21, 1972.

The town road was originally simply a grass and dirt path. Eventually, the portion of the town road approaching the Griffin residence from the east was graveled and regularly maintained and the portion from the Griffin residence to the west was left to the elements, amounting to only a two-rut road with growing weeds in the center. The town administers approximately 37 miles of town roads in all, approximately 31 miles of which are graveled. Use of the disputed portion of the road was seasonal and sporadic, but was claimed by the town board to be necessary to the agricultural pursuits of neighborhood farmers.

In May 1972, respondents impeded traffic attempting to move west past their residence on the town road. The Sterling Town Board brought the instant action against the Griffins for a permanent injunction against their interfering with the use of the town road or any portion thereof. Respondents entered a counterclaim which was severed from the complaint for trial purposes.

After a 2-day court trial, the trial court ordered judgment for respondents. The trial court found that the entire town road was legally established in 1889 and had never been abandoned by the town under the traditional laws pertaining to abandonment of public roadways.[2] However, the court found that the disputed portion of the town road was presumed abandoned within the

---

[2] See, e. g., In re Application of Rein to Register Title, 275 Minn. 79, 145 N. W. 2d 537 (1966); Village of Newport v. Taylor, 225 Minn. 299, 30 N. W. 2d 588 (1948); Freeman v. Township of Pine City, 205 Minn. 309, 286 N. W. 299 (1939); Parker v. City of St. Paul, 47 Minn. 317, 50 N. W. 247 (1891).

meaning of subd. 5 of the Marketable Title Act (Minn. St. 541.023) [3] because the use of that portion of the road did not establish possession in the township within the meaning of subd. 6 [4] of the act and the town had failed to record its claim in the office of the Blue Earth County register of deeds prior to January 1, 1948, in accordance with subd. 2 of said act.

The issues raised on this appeal are:

(1)   Does the Marketable Title Act, Minn. St. 541.023, apply to town roads established prior to a 1973 amendment to Minn. St. 1971, § 164.07, subd. 11?

(2)   What is the nature of the use of a town road which must be demonstrated in order to come within the "possession" exception of Minn. St. 541.023, subd. 6?

(3)   Does the evidence support a finding that Sterling Township was not in possession of the town road within the meaning of subd. 6?

■   Appellant admits the general application of the Marketable Title Act, Minn. St. 541.023, to the political subdivisions of the state; it contends, however, that Minn. St. 1971, § 164.07, subd. 11, prior to its 1973 amendment, exempts town roads from its operation. That section prior to amendment provided that the order establishing a town road "shall be recorded by the town clerk, and a copy thereof preserved in the county auditor's office." Minn. St. 1971, § 164.07, subd. 11. The 1973 amendment requires the town clerk to file the order "for record with the

---

[3] "Subd. 5.   Any claimant under any instrument, event or transaction barred by the provisions of this section shall be conclusively presumed to have abandoned all right, claim, interest, incumbrance or lien based upon such instrument, event or transaction; and the title in the name of any adverse claimant to the real estate which would otherwise be affected thereby shall not be deemed unmarketable by reason of the existence of such instrument, event or transaction; it being hereby declared as the policy of the State of Minnesota that, except as herein provided, ancient records shall not fetter the marketability of real estate."

[4] "Subd. 6.   This section shall not * * * bar the rights of any person, partnership or corporation in possession of real estate. * * *"

register of deeds or registrar of titles of the county within which the land and premises are located." L. 1973, c. 24, § 1.

A premise of appellant's argument is that the requirement of Minn. St. 1971, § 164.07, subd. 11, that a copy of the order establishing the road be filed with the county auditor is intended as the exclusive manner by which a town is to give notice to the public of its right-of-way interest in a tract of property. That conclusion is doubtful. Rather than for public notice, it would seem the provision requiring filing with the county auditor was for purposes of tax assessment. Moreover, it has long been held that the county auditor's records do not constitute notice of an interest in land, Roussain v. Norton, 53 Minn. 560, 55 N. W. 747 (1893), cited in B. W. & Leo Harris Co. v. City of Hastings, 240 Minn. 44, 59 N. W. 2d 813 (1953).

Minn. St. 1971, § 164.07, subd. 11, is simply not inconsistent with the Marketable Title Act. The act is unambiguous in its application to political subdivisions, § 541.023, subd. 1, and has been applied to them, B. W. & Leo Harris Co. v. City of Hastings, *supra* (city's claim to tract of land based on claim of adverse possession barred by the act). It is also clear that the act applies to right-of-way easements. In Wichelman v. Messner, 250 Minn. 88, 103, 83 N. W. 2d 800, 814 (1957), we suggested that unregistered right-of-way easements are subject to extinguishment unless brought within the protection of the possession exception, and we have so applied the act in subsequent decisions, Caroga Realty Co. v. Tapper, 274 Minn. 164, 143 N. W. 2d 215 (1966); United Parking Stations, Inc. v. Calvary Temple, 257 Minn. 273, 101 N. W. 2d 208 (1960). The only exceptions to its pervasive reach are that it may not be invoked against the following classes of persons, as set forth in Wichelman v. Messner, 250 Minn. 88, 112, 83 N. W. 2d 800, 819:

"* * * (1) [T]hose persons who seek to enforce any right, claim, interest, encumbrance, or lien founded upon any instrument, event, or transaction which was executed or occurred *within* 40 years prior to the commencement of the action; (2) those

persons who seek to enforce a claim founded on any such instrument or event which was executed or occurred *over* 40 years prior to the commencement of the action, *if they have filed proper notice* within 40 years of the execution or occurrence of the instrument, event, or transaction upon which it is founded; and (3) those excepted by subd. 6 of the act, which includes persons in possession."

Appellant cites with emphasis the statutory rule of construction, employed in Wichelman, providing that "the legislature intends to favor the public interest as against any private interest" (Minn. St. 645.17[5]) as support for holding town roads exempt from the act since they are in the public interest. But the significance of that rule in construing the act is broader than appellant's argument admits. It is summed up in the final sentence of Wichelman:

"* * * They [Marketable Title Acts] must be construed in the light of the *public good in terms of more secure land transactions* which outweighs the burden and risk imposed upon owners of old outstanding rights to record their interests." 250 Minn. 121, 83 N. W. 2d 825. (Italics supplied.)

The fact that the owner of an old, outstanding interest is a public body is not a sufficient public interest to defeat the larger interest of the public in greater security in real estate transactions. Cf. B. W. & Leo Harris Co. v. City of Hastings, *supra*.

We therefore hold that town roads are not exempt from the application of the Marketable Title Act.

■ Appellant's interest in the Griffin property was not registered as required by the act. Thus, if it is to escape the act's bar, appellant must establish its possession of the town road to bring it within the exception of subd. 6. That raises the question of what the nature of that possession must be.

Appellant would have us incorporate the common-law rule applied in cases involving the abandonment by the public of its rights in its roads and streets. Appellant correctly observes that

we have jealously guarded the rights of the public, upholding claims of abandonment only in those cases where nonuser was accompanied by affirmative and unequivocal acts of the public indicative of an intent to abandon and inconsistent with the continued existence of the easement or right-of-way.[5] Respondents urge continued adherence to the rule we have applied in prior decisions involving the issue of possession under subd. 6 of the act—

"* * * it [possession] must be present, actual, open, and exclusive and must be inconsistent with the title of the person who is protected by this section. It cannot be equivocal or ambiguous but must be of a character which would put a prudent person on inquiry." B. W. & Leo Harris Co. v. City of Hastings, 240 Minn. 44, 49, 59 N. W. 2d 813, 816.

See, also, Wichelman v. Messner, *supra*, and Caroga Realty Co. v. Tapper, *supra*, applying that rule.

As we indicated in Caroga Realty Co. v. Tapper, 274 Minn. 164, 179, 143 N. W. 2d 215, 225, the possession contemplated by Minn. St. 541.023, subd. 6, is such as will provide notice of the possessor's interest in the property. In Wichelman v. Messner, 250 Minn. 88, 103, 83 N. W. 2d 800, 814, we suggested that in determining the question of possession as to easements due regard must be given to the nature of the easement. But by that we did not mean that the possession may fall below that which will put a prudent person on inquiry. Certainly the nature of the possession of a town road will differ from that of a private easement but it must nevertheless be sufficient to provide the substitute notice contemplated by the act in subd. 6. We note from the trial court's memorandum that this is precisely the standard he employed.

■ The final question is whether the evidence as a whole rea-

---

[5] See, State v. Marcks, 228 Minn. 129, 36 N. W. 2d 594 (1949); City of Rochester v. North Side Corp. 211 Minn. 276, 1 N. W. 2d 361 (1941). See, also, cases cited at footnote 2, *supra*.

sonably tends to support the finding of the trial court that appellant was not in possession, as we have defined possession, of the town road right-of-way as of January 1, 1948, and up to the commencement of this action. Caroga Realty Co. v. Tapper, 274 Minn. 164, 170, 143 N. W. 2d 215, 220. On this issue, the trial court in a lengthy memorandum stated:

"The evidence is undisputed that at no time subsequent to August 31, 1889 did the Township of Sterling do anything toward the physical establishment of a roadway across the north rod of the ten acre tract to which the defendants hold record title, with the exception that some minimal grading may have been done in 1968 and some slight ditching may have been done at the same time. The evidence is also undisputed that the area in question was not maintained as a roadway, as that term is normally used in conjunction with road care, at any time from August 31, 1889 to the present.

\* \* \* \* \*

"\* \* \* This Court has found that the evidence established that Sterling Township was not in possession of the rod strip of land either at the time of the passage of MSA 541.023, or at the time of the initiation of this action, or at any effective time in between. As was previously stated, Sterling Township has never physically constructed a road nor maintained one over the area described in Plaintiff's Exhibit No. 1. This in and of itself would not be fatal to plaintiff's claim. But the evidence failed to establish that the public used the 'roadway' in a manner from which it could reasonably be concluded that the public was using the area as a road and thereby had possession of such tract of land. It is the conclusion of the Court that the evidence failed to establish by a fair preponderance thereof that physical possession was demonstrated by the use of the area by members of the public. Although there were numerous witnesses called by the plaintiff, an analysis of their combined testimony evidences but very little use of the claimed 'roadway' over a period of years extending back into the 1920's. Some of the witnesses who were

called to testify as to use of the 'roadway' had no experience beyond 1940. Others called had no experience before the 1950's. Applying the evidence, it is the opinion of the Court that the most it would establish was that in any one year the 'roadway' was used only rarely and by only a very few people, and that there were periods of years in which the evidence failed to show any use whatever. In the Court's opinion such use did not then establish the possession required by MSA 541.023 to avoid application of the conclusive abandonment presumption."

These findings of the trial court are adequately supported in the record.

In addition, we note further facts which support the court's conclusion that appellant was not in possession. The first is that periodic road checks by the town stopped at respondents' farm and did not proceed down the disputed section of the road. The same was true of the snowplow. While that may be consistent with the limited nature of the town road, as appellants argue, it nevertheless is the type of conduct that would indicate to the prudent person that the public interest had been abandoned. Second, at oral argument it was pointed out to us that the disputed portion of the road led to a dead end due to the prior formal abandonment of another section of the same road. Finally, one of the witnesses who testified as to his use of the road stated that he, in using the road, never gave any thought to whether it was a town road or merely a pathway. As we said in Caroga Realty Co. v. Tapper, *supra,* and United Parking Stations, Inc. v. Calvary Temple, *supra,* knowledge of the existence of the easement is a factor to be considered in determining possession.

We therefore hold that the record supports the finding of the trial court that appellant's possession of the town road was not sufficient to put a prudent person on inquiry and therefore its interest in the respondents' property is barred.

Thus, on the facts determined in the trial court, while no public easement or public roadway can be found to exist, it is possible and very likely probable that certain area farmers, notably

one Leonard Brunz, can claim and prove the existence of a private easement and use of the roadway for his farm machinery by prescription. Our opinion is not intended to preclude their doing so. Respondents' attorney at oral argument admitted that certain people might have a strong case for such a prescriptive right and indicated his clients had no objection to the existence of such rights, and that they would even consider reducing such easements to writing. Respondents only claim is that no public road exists by reason of the fact that the character of the use claimed by the public is so equivocal and ambiguous as would not put a prudent person on inquiry that a public road exists. With that we agree.

Affirmed.